GEORGE WHITNEY *vs.* GEORGE W. SAWYER & another.

A workman employed in sawing lumber testified that he put down upon a slate the number of feet sawed, and when the slate was full transferred these figures to a tally board, and afterwards copied them into an account book. *Held*, the figures on the slate and tally board having been rubbed out, that the book was admissible in evidence to show by computation the number of feet of lumber sawed; that there was sufficient evidence to go to a jury upon the question; and that the witness might refresh his recollection by the book.

ACTION OF CONTRACT for money paid to the defendants for lumber beyond the lumber actually furnished by them to the plaintiff. Trial and verdict for the plaintiff in the court of common pleas, before *Aiken*, J., to whose rulings the defendants alleged exceptions. The case is stated in the opinion.

*C. Brimblecom*, for the defendants, cited *Barker* v. *Haskell*, 9 Cush. 218; *Bustin* v. *Rogers*, 11 Cush. 346; *Kendall* v. *Field* 14 Maine, 30; *Ayer* v. *Sawyer*, 32 Maine, 163.

*N. Wood*, for the plaintiff.

MERRICK, J. There is no controversy whatever between the parties concerning the terms or the interpretation of any of the provisions of their contract. It is mutually conceded, that the defendants delivered to the plaintiff the whole lot of logs sold, and received from him an advance of $848, to be accounted for whenever the price of the logs should be ascertained according to the stipulated rate of compensation. And they do not deny that if the sum thus advanced exceeds the amount which according to the terms of the contract they were to receive for the logs, the plaintiff is entitled to recover the excess in this action. The real question therefore which arose at the trial, and which

is presented in the bill of exceptions, is whether he produced and laid before the jury any evidence, legal and competent in its nature, and sufficient in substance and effect to prove the overpayment which he contended that he had made.

To establish this fact of overpayment, it devolved upon him to show that the logs had been sawed into seven-eighth inch boards, of how many feet the boards thus produced consisted, and that, estimating them at the rate of six dollars per thousand feet, the whole quantity would amount to a sum less than the sum of $848, which he had advanced to the defendant. The evidence upon which he relied to prove these facts consisted of the testimony of three witnesses produced by him ; Brown, Fisk and Stockwell. Fisk and Stockwell each testified that he sawed in the night time a certain portion of the logs ; that he ascertained by admeasurement the quantity of such boards in each of the logs which he sawed, and wrote down the amount of boards in each log, thus ascertained, on a slate· kept in the mill for that purpose ; and Brown testified that he sawed in the daytime all the logs which were not sawed by Fisk and Stockwell ; and that he ascertained by admeasurement the quantity of such boards in each of the logs thus sawed by him, and wrote down the amount of boards in each log, thus ascertained, on the same slate which was used by Fisk and Stockwell. Here there was evidence to show that all the logs were sawed ; the quantity of boards produced by each log, and therefore necessarily of the entire lot, was ascertained, and was written down in figures upon the slate. If these figures, thus made upon the slate, had been preserved and were now in existence, nothing would remain in order to ascertain the aggregate quantity of boards, but to add the several quantities together by an accurate computation. But it appears from the testimony of these same witnesses that all the figures thus made on the slate have been wiped out and erased therefrom ; and therefore it was impossible to produce them, and they could not be laid before the jury, for they had ceased to exist. But as each of the witnesses testifies that the figures which they severally made upon the slate state exactly the quantities of boards produced

by each of the several logs which they sawed; and as those fig-
ures are no longer in existence, and cannot therefore be pro-
duced, the next inquiry is if it can by competent evidence be
shown exactly what those figures were. And upon this point
the same witnesses testify that before these figures were erased-
from the slate, they were transferred and written down by the
witnesses themselves upon the tally board which was kept in
the mill. Brown then testifies that when by such transference
the tally board was full, he carried it to the plaintiff; and that
he and the plaintiff then transferred the amounts specified on
the tally to the mill book; and that the figures on the tally
board having been thus transferred, were planed off, and were
consequently destroyed and forever lost. Of all the figures
which the several witnesses, in the different transactions testified
of by them, had made, these on the mill book alone remained
in existence, and none of the others could possibly be produced
at the trial.

Of the sufficiency and credibility of this testimony the jury
were the sole and exclusive judges; the court could be called
upon only to pass upon the question of its competency. And
of its competency there would seem to be no reason to enter-
tain a doubt. The witnesses testified to facts within their
own personal knowledge; viz: the sawing of the logs, the ad-
measurement of the quantity of boards produced, and the writ-
ing or marking down of these quantities in figures first upon
the slate, and transferring afterwards the same figures succes-
sively from the slate to the tally board, and from the tally board
to the mill book. If the slate or the tally board had not been
accounted for, and the figures on them shown to have been irre-
trievably lost or destroyed, they must undoubtedly have been
produced; and the contents of them, being written instruments,
could not have been proved by oral testimony. But a proper
foundation for its introduction having been first laid, in the
proof of the loss and destruction of these written instruments,
the secondary evidence of their contents was competent and
admissible.

The mill book, purporting to show the quantity of boards

produced from all the logs sawed, having, upon the assumption that the testimony of the several witnesses was credited and accepted by the jury as true, been proved to correspond exactly in the figures contained in it with those originally made upon the slate, specifying the admeasurement of the boards made by the witnesses as the logs were severally sawed, was, for the sole purpose for which it was allowed, properly submitted to the consideration of the jury. This purpose was merely for computation. The book was not offered, nor allowed to be laid before the jury, as evidence, either of the fact that the logs, or any of them, had been sawed, or of the quantity of boards which had been produced in the process of their manufacture. The witnesses could not at the trial recollect, nor did they pretend to recollect, the particular number of feet which they found in the numerous admeasurements which they made as the logs were severally sawed; but they professed to be able to recollect, and that they did recollect, that they sawed all the logs, ascertained in each particular instance the number of feet of boards produced, wrote down the same in figures on the slate, and afterwards truly and correctly transferred those figures successively from the slate to the tally board, and from the tally board to the mill book. If this was true, nothing but computation of the several amounts specified on that book remained to ascertain the whole number of feet which the entire lots of logs when sawed had produced.

The testimony of these witnesses being shown to be competent, and the evidence deducible from it, if fully believed and credited, being of the most direct and conclusive character, to show the aggregate quantity of boards obtained from the logs, it follows of course that the presiding judge was perfectly correct in refusing to yield at the trial to the request of the defendants' counsel, that he should rule that there was no evidence in the case upon which the jury could render a verdict for the plaintiff. If the figures on the mill book were shown to be correct, and if, as the plaintiff testified that both he and the defendants found, these figures upon computation showed that there were in the whole only 107,468 feet of seven-eighth inch boards,

making the price of all the logs sold, estimating the boards at the rate of six dollars per thousand feet, only $644.80, it did appear that the plaintiff had overpaid the defendants the sum of $203.20, and that he is therefore justly entitled to recover that sum in the present action.

The presiding judge indeed, besides allowing the mill book to go to the jury for the mere purpose of computation, allowed it, as it is said in the bill of exceptions, to be used by the plaintiff's witnesses to refresh their recollection. This however is not relied upon by the defendants as a sufficient cause for disturbing the verdict, and it seems in itself to be of very little importance. If this book was used by Brown to refresh his recollection as to the fact that he made the transcript from the tally board, and made it correctly, that was a legitimate purpose, and fairly within the rule by which written documents are allowed to be resorted to by witnesses. It does not appear from the bill of exceptions that it was availed of by him for any other purpose, or that the others resorted to it at all.

Considering, as we have, that the only object for which the mill book was permitted to be laid before the jury was that of mere computation, it is obviously unnecessary to express any opinion upon the question whether it would have been admissible under the peculiar rule of the law of evidence in relation to tradesmen's books, or books of charges, aided by the suppletory oath of the plaintiff, a party in interest. For although this was the question principally discussed at the bar in the argument of this cause, and the interposition of which has perhaps occasioned the only ground of doubt which could be urged against the regularity of the trial, yet, as this book was not offered or permitted to be used as being in itself evidence or an instrument of proof, there was no occasion, in order to justify its introduction, to resort to that rule, or to make any ruling or decision in relation to it.                    *Exceptions overruled.*